FILED
U.S. DISTRICT COURT
                 DIV.
2011 JAN 20 AM 11:43
CLERK_____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA,

vs.

CASE NO.: CR210-065

CHRISTOPHER YOUNG

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Defendant Christopher Young ("Young" or "Defendant") has been charged with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). Defendant filed a Motion in Limine and Motion to Suppress.[1] The undersigned conducted a hearing on these Motions on January 13, 2011, at which Officers Cameron Chance and Kevin Echols testified.

## STATEMENT OF THE CASE

The credible testimony at the hearing establishes the following:

On the evening of April 30, 2010, Officer Cameron Chance ("Chance"), formerly of the Brunswick Police Department, was working an off-duty detail (i.e., he was wearing his Police Department-issued uniform but was not being paid by the Police Department at that time) at the Double Eagle Bar in Brunswick, Georgia. Chance was informed that someone from the club's security team patted down Defendant and felt a

---

[1] These Motions were submitted and filed as one document.

gun on his person and that Defendant was denied entry into the club. Chance saw Defendant walk past him and put something in the driver's side of a car, which was about twenty (20) yards away from where Chance was standing. Defendant approached the entrance to the club, and Chance told him at least ten (10) times that he could not go into the club. Chance asked Young why he tried to bring a gun into the club, and Young stated that he needed protection. Chance stated that his exchanges with Young escalated, and Young told him, "[Expletive] you. I'm not leaving." At that time, Young was handcuffed and placed under arrest for disorderly conduct. Kevin Echols ("Echols") of the Brunswick Police Department arrived at the scene and witnessed some of the exchange between Chance and Young. A minute or two after Young was arrested, Chance approached the car he saw Young go to earlier. An unidentified man was sitting in the driver's seat with the car keys, and Chance and Echols later saw him drive away in the car. Chance asked this man for permission to search the car, and the man said he could. Chance found a gun under the driver's side seat, and the man who was sitting in the car told him the gun was not his. Defendant was charged with being a felon in possession of a firearm several days later after Chance learned Defendant is a convicted felon.

Defendant contends that any statements he made should be suppressed. Defendant also contends that evidence relating to the firearm found in the car should be suppressed because the consent was invalidly given.

AO 72A
(Rev. 8/82)

## DISCUSSION AND CITATION TO AUTHORITY

I. **Statements**

Young asserts that any statements he made during a custodial interrogation should be suppressed, as these statements were made in violation of his rights.

"No person . . . shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards[2] effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. The circumstances of each case dictate "whether there is a restraint on the suspect's freedom of movement 'of the degree associated with a formal arrest.'" United States v. Phillips, 812 F.2d 1355, 1360 (11th Cir. 1987) (quoting Minnesota v. Murphy, 465 U.S. 420, 430 (1984)). An objective, reasonable person test has been adopted "in cases involving custody issues." Id. at 1359. In applying this test, "the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood [the] situation." Id. at 1360. In other words, the inquiry is whether "a reasonable [person] in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such

---

[2] "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." Miranda, 384 U.S. at 444.

3

extent that he would not feel free to leave" the scene. Id. (quoting Murphy, 465 U.S. at 430).

The only question Chance asked of Young was why he tried to bring a gun into the club on April 30, 2010; however, this question was not asked while Young was in custody. In fact, Chance asked Young this question prior to his arrest and at a time when Chance was trying to get Young to leave the premises. Young clearly was not "in custody" at this time, and thus, there was no need for Chance to have notified Young of his rights pursuant to Miranda. Accordingly, any statements—incriminating or otherwise—Young may have made prior to his arrest on April 30, 2010, are not subject to suppression. This portion of Defendant's Motions should be **denied**.

## II. Consent to Search

Young alleges that the search of the car in which a firearm was found on April 30, 2010, was conducted without a warrant, probable cause, consent, or "other lawful authority[.]" (Doc. No. 26, p. 1).[3]

"The right of the people to be secure in their person, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. However, an exception to the general rule against a warrantless search is a search made pursuant to consent. Schneckloth v. Bustamonte, 412 U.S.

---

[3] The undersigned questions whether Defendant has standing to object to the consent and subsequent search of the car. The only evidence presented at the hearing about ownership of the car was that the police officers did not "run" the car's license plate "through the system" to determine who the owner was. There was no evidence that Young was the owner of the car or otherwise had a "legitimate expectation of privacy" in the car such that he legitimately can object to the search of this car. United States v. Epps, 613 F.3d 1093, 1097 (11th Cir. 2010)(noting that "only individuals who have a legitimate expectation of privacy in the area invaded may invoke the protections of the Fourth Amendment."). However, out of an abundance of caution, the undersigned has addressed Defendant's assertions in this regard.

4

218, 219 (1973). Consent must be freely given, and the totality of the circumstances determines whether the consent was knowingly and voluntarily given. United States v. Ramirez-Chilel, 289 F.3d 744, 752-53 (11th Cir. 2002). The "'determination of consent' is based on 'an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the'" area to be searched?. United States v. Mercer, 541 F.3d 1070, 1074 (11th Cir. 2008) (quoting Illinois v. Rodriguez, 497 U.S. 177, 188 (1990)). Stated another way, consent must be given voluntarily by someone "having, or reasonably appearing to have, authority to do so." United States v. Perez Ochoa, No. 10-11303, 2010 WL 4458790, at *5 (11th Cir. Nov. 9, 2010) (citing United States v. Dunkley, 911 F.2d 522, 525 (11th Cir. 1990)).

It was reasonable for Chance to believe that the unidentified man sitting in the driver's seat of the car he saw Defendant approach earlier had the authority to give his valid consent to search the car. This unidentified man was sitting in the driver's seat, had what appeared to be the keys to that car in his possession, and was later seen driving away in this car.[4] Under the totality of the circumstances, Chance's request for consent from the unidentified man was reasonable. There is no evidence before the Court that this consent was not given knowingly and voluntarily. The consent given was valid, and this portion of Defendant's Motions should be **denied**.

---

[4] The undersigned recognizes that the testimony that the unidentified man was later seen driving away in this car is not relevant to the reasonableness inquiry, but it does bolster the reasonableness of Chance's actions under the circumstances.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendant's Motion in Limine and Motion to Suppress be **DENIED**.

**SO REPORTED** and **RECOMMENDED**, this _20th_ day of January, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)